UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:03CV-173-R

TRAVELDOR LLC                                                                                           PLAINTIFF

v.

PECK'S TRANSPORTATION, ET AL.                                                          DEFENDANTS

## ORDER

This matter is before the Court on Plaintiff Traveldor's Motion for Reconsideration (Dkt. # 67) and Defendant Transportation's Motion for Reconsideration (Dkt. # 69).  Responses and replies have been filed (Dkt. Nos. 68, 70, & 71).  For the reasons that follow, these Motions are **DENIED**.

## STANDARD

A motion to reconsider will be granted in one of the following situations: a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  "A motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

## DISCUSSION

In its opinion on January 3, 2005, this court made separate, alternative holdings about the use of "Don Peck's" or "Peck's."  First and foremost, Don Peck has the right to use his own name under a trademark theory of recovery but restrictions can be placed on Don Peck's use of his name under an unfair competition theory of recovery.  Second, the words "Don Peck's" or "Peck's" have not been in exclusive use and consequently, cannot become a protectible mark.  In other words, if

1

others use the same name, secondary meaning cannot be established because consumers cannot form a strong opinion of which business the name identifies.

Even if "Don Peck's" had acquired through advertising or some other means, such "secondary meaning" as to become a trade name, it "continues to serve the important function to its bearer of acting as a symbol of that individual's personality, reputation and accomplishments as distinguished from that of the business, corporation or otherwise, with which he has been associated." *Madrigal Audio Laboratories, Inc. v. Cello, Ltd.*, 799 F.2d 814, 822 (2d Cir. 1986). "Accordingly, though an individual may sell the right to use his personal name, *Levitt Corp. v. Levitt*, 593 F.2d 463, 468 (2d Cir. 1979); *Guth v. Guth Chocolate Co.*, 224 F. 932, 933-34 (4th Cir.1915); *The Lepage Co. v. Russia Cement Co.*, 51 F. 941, 943 (1st Cir.1892), a court will not bar him from using that name unless his 'intention to convey an exclusive right to the use of [his] own name' is 'clearly shown.'" *Id.* at 822-23; *Cornman v. Graeber Stringing & Wiring Mach. Co.*, 69 F. Supp. 550, 553-54 (Pa. 1946) ("Every individual who has not voluntarily imposed limitations upon himself may engage in business and may use his name in such business in all ordinary ways. An intention to convey an exclusive right to the use of one's own name or to restrict him in his lawful business activity must be clearly shown."). *See also* J. Thomas McCarthy, Trademarks and Unfair Competition § 18:33 (4th Ed. 2004) ("Some courts imply that while the buyer of a business obtains the right to the seller's name as a mark, the seller can continue such usage also, unless there is express language in the contract giving the buyer the exclusive right to use the personal name as a mark").

In the Assets Purchase agreement, Don Peck agreed to sell the assets of the business including "its moving vehicles, licenses, trademarks and goodwill." "Don Peck's Moving and

Storage, Inc." is not a trademark. It is in fact a **trade name**, which is "any name used by a person to identify his or her business or vocation." 15 U.S.C.A. § 1127. Therefore, Don Peck could not have known that he sold his name as a trademark because the name of the business is not in fact a trademark but a trade name.

Traveldor argues that the name of the business passed to Traveldor under the goodwill of the business. As a point of clarification in the January 3, 2005, footnote 1 is amended to read: Traveldor has purchased the goodwill of the business and has the right to use the name "DON PECK'S MOVING AND STORAGE, INC." even if it is not protectible. *See Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 670 F. Supp. 795, 798 (N.D. Ill. 1987) (" Unless there is evidence to the contrary, a trade name will be presumed to have passed, even in the absence of formal assignment, to one to whom the business has been transferred."). While Traveldor may have the right to use the name "Don Peck's Moving and Storage, Inc.," Don Peck has not conveyed exclusive use of that name or of his name "Don Peck" to Traveldor. *See White v. Trowbridge*, 64 A. 862 (Pa. 1906) ("Counsel for appellants have here advanced the proposition that, by the mere transfer of his interest in the good will of the business, the defendant was precluded from entering into a similar business in the same town, and prosecuting it in competition with the old firm, of which he had been a member. The position is wholly untenable...In the present case the contract for the sale of defendant's interest in the business was in writing, and we do not find in it anything which can be construed into an agreement by the defendant to refrain from engaging in a similar business, under his own name...So long as the defendant does not attempt to sell his goods as those of the old firm, or represent that his business is a continuation of the old firm, he is at liberty to engage under his own name, honestly, and in good faith in the same line of business and in the same locality.").

Similarly, the right to use the name "Peck's Moving and Storage, Inc." was sold to Wagner's years before Traveldor bought "Don Peck's Moving and Storage."

In order for this court to bar Mr. Peck from using his own name under a trademark theory, Traveldor must show that it is clear that Mr. Peck's intention was to give Traveldor the exclusive right to use his name. *See Madrigal*, 799 F.2d at 822-23. No evidence in this case suggests that when Don Peck was selling the goodwill of the business, he knew he was also selling the **exclusive** use of the name "Don Peck." In fact, Mr. Baker from Traveldor testified in his deposition "[Mr. Peck] was willingly agreeable to continue the name Don Peck Moving and Storage." But Mr. Baker further testified that he did not know if he discussed with Mr. Peck that he would not be able to use his own name. From this testimony, it is clear that Mr. Peck only gave Traveldor the right to use the name "Don Peck's Moving and Storage." Further, Traveldor has not shown Mr. Peck's clear intention to give Traveldor the exclusive right to use his name.[1] In fact, Traveldor cannot even show that it discussed his name at all with him.

---

[1]Thomas McCarthy in his well-respected treatise on trademarks had the following to say about the sale of a personal name:

> While the sale of a name as a symbol of a business or its goods or services is proper, one cannot "sell" to another the right to the name as a symbol of personal skill and ability. It could be a form of fraud for the buyer of a personal name mark to represent itself as possessing the seller's personal skill when in fact that person has sold out the business and is no longer connected with it.

> Some cases have found that in particular situations, good will may be personal where business reputation depends largely on qualifications and talents personal to an individual or group of individuals...In such instances, the mark and the good will it symbolizes may be incapable of being validly assigned to another person.

Thomas McCarthy, Trademarks and Unfair Competition § 18:35 (4th Ed. 2004). To the extent that the name Don Peck represents any skill in the business, it is not assignable. Even if Don Peck's name is not representative of skill, Don Peck can advertise his association with any business. *See Madrigal*, 799 F.2d at 823.

"In other words, what the plaintiffs really desire is protection from the business competition of the defendant carried on openly and frankly by him under his own name. As we have already seen, this was something which they did not provide for under the terms of the written agreement when they purchased from him his interest in the business, and they cannot now be permitted indirectly to attain this end which they failed to stipulate expressly for in negotiating the purchase, and which presumably was not included in fixing the amount of the consideration." *White v. Trowbridge*, 64 A. 862, 866 (Pa. 1906).

Traveldor argues that the Wagner's is not generally known by the name "Peck's Moving and Storage" and the court should not consider Wagner's use in this case. In Exhibit 3 of Dkt. # 32/33, however, the Defendants have attached a Paducah White Pages listing of "Peck's Moving and Storage" with an address and phone number that corresponds to the Yellow Page listing for "Wagner Moving and Storage." Regardless of the extent of Wagner's use of the name "Peck's Moving and Storage" or "Don Peck's Moving and Storage," someone else not under the control of Traveldor is using most of the same name as Traveldor. From the deposition of Robert Baker, pp. 78-79, it is apparent that Wagner's bought "Peck's Moving and Storage" and has the right to use the name. Wagner's is using more of the name "Don Peck's Moving and Storage" than "Peck's Transportation" or even "Don Peck's Transportation."

Traveldor argues that this court erroneously found that Traveldor had not established secondary meaning. Traveldor did not present any consumer evidence of secondary meaning such as direct consumer testimony, consumer surveys, and amount of sales and number of customers for this court to present to a jury. *See DeGidio v. West Group Corp.*, 355 F.3d 506, 513 (6th Cir. 2004). The undisputed facts of this record show that the term "Don Peck's" or "Peck's" has been used in

5

other businesses. The only evidence that Traveldor presented is that "Don Peck's Moving and Storage" had advertised its business and that it had been in business for a long time. The burden of proof is on the plaintiff and "[a] high degree of proof is necessary to establish secondary meaning of a descriptive term." *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 118 (5th Cir. 1979). "Secondary meaning is established when a preponderance of the evidence demonstrates that the attitude of the consuming public toward the mark denotes a single thing coming from a single source." *DeGidio*, 355 F.3d at 513. Traveldor has presented no consumer evidence, especially in the form of testimony or surveys, that this court or a jury could use to find secondary meaning. While advertising and length of time in business are to be considered by this court, the court or a jury cannot find secondary meaning without some evidence about the attitudes of consumers. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Traveldor has simply presented no evidence of "the attitude of the consuming public toward the mark" needed for the court or jury to find for secondary meaning.

Defendants politely ask this court to reconsider its ruling on the defamation claim. Traveldor is alleging defamation *per se* where the Plaintiff does not have to prove damages. *See CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1084 (W.D. Ky. 1995). Traveldor is a business, but the rule is that disparaging a business's products is rarely defamation *per se*. *Id*. Here Traveldor is alleging that Mr. Peck disparaged it not its products by remarking that it was going "bankrupt." The Restatement 2d of Torts § 573 Comment c, Illustration 5 lists as an example of defamation *per se*: a statement that a merchant is insolvent. Therefore, Traveldor does not need to prove special

6

damages for the defamation at issue here.

**UNFAIR COMPETITION**

In the Court's opinion on January 4, 2005, the Court did not address whether Traveldor had a claim for unfair competition under either Kentucky or Federal law. Therefore, these claims continue. This Court found that Traveldor had presented some likelihood of confusion and has offered more evidence of confusion since the Court's opinion on January 4, 2005. Traveldor has presented enough evidence to be submitted to the trier of fact so that it can determine whether the public will be confused by Don Peck's use of his name in another business.

The Court of Appeals of Kentucky, the highest court in Kentucky at that time, had the following to say about a similar case of unfair competition:

> Nevertheless, he held that Mr. Kenner Taylor's participation in the conveyances by which the assets, trade names, trade marks, or good will of the corporation, of which he was a stock holder, or of the partnership of which he was a member, would not divest him of his personal right to fairly, honestly, and reasonably make use of his own name Kenner Taylor, or his family name Taylor, in his business, or for any other legitimate purposes. The Court then held that honesty and fair dealing on the part of K. Taylor could be accomplished by placing in its advertisements and on its labels language specifically showing that it was not the successor to nor connected with the maker of Old Taylor whiskey. That decision finds ample support in the following authorities: 107 A.L.R. p. 1282 where, in quoting from a Canadian case, it says: "Every man has the undeniable right to the use of his patronymic name in his business and he cannot be absolutely restrained from using it, even though another person bearing the same name, previously established in a business of the same character, has adopted it; he can only be prevented from making use of it in such a way as to cause confusion." In *Stix, Baer and Fuller Dry Goods Company v. American Piano Company*, 8 Cir., 211 F. 271, 274, the Court said: 'It is now settled beyond controversy that a family surname is incapable of exclusive appropriation in trade. The right of every man to use his own name in his business was declared in the law before the modern doctrine of unfair trade competition had arisen. It is part of the law of trade-mark. \* \* \*. If, however, the name has previously become well known in trade, the second comer uses it subject to three important restrictions: (1) He may not affirmatively do anything to cause the public to believe that his article is made by the first manufacturer. (2) He must exercise reasonable care to prevent the public from so believing. (3) He must exercise reasonable care to prevent the

> public from believing that he is the successor in business of the first manufacturer. This duty to warn, however, must not be pressed so far as to make it impracticable for the second comer to use his name in trade.' To the same effect is Fletcher On Corporations, Permanent Edition, Volume 6, p. 45.

*Country Distillers Products v. Samuels, Inc.*, 217 S.W.2d 216, 220 (Ky. 1949). The Kentucky Court of Appeals upheld the requirement that the defendant put a disclaimer on their product stating that their product was not connected with plaintiff. *Id.* Other courts have also addressed claims of unfair competition against a companies using an employee's name or a similar name to an existing company. *S.C. Johnson & Son, Inc. v. Johnson*, 266 F.2d 129, 141 (6th Cir. 1959); *815 Tonawanda St. Corp. v. Fay's Drug Co., Inc.*, 842 F.2d 643, 647-49 (2d Cir. 1988); *Kane v. Roxy Theatres Corp.*, 65 F.2d 324, 327 (2d Cir. 1933); *Goldwyn Pictures Corp. v. Goldwyn*, 296 F. 291 (2d Cir. 1924); *Thomson Ind., Inc. v. Nippon Thompson Co., Ltd.*, 298 F. Supp. 466 (E.D. Ny. 1968); *Carl Springer, Inc. v. Carl Springer Supply Co.*, 104 A.2d 637 (Del. Ch. 1954).

**IT IS HEREBY ORDERED:**

Both Motions for Reconsideration are **DENIED**.